UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued October 4, 2006
Decided November 13, 2006

**Before**

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 06-1155

| | |
|---|---|
| DENNY PATRIDGE and JUDY PATRIDGE,<br>　　*Plaintiffs-Appellants*,<br><br>　　　　*v.*<br><br>UNITED STATES INTERNAL REVENUE SERVICE, et al.,<br>　　*Defendants-Appellees*. | Appeal from the United States District Court for the Central District of Illinois<br><br>No. 05 C 3249<br><br>Jeanne E. Scott,<br>*Judge*. |

## O R D E R

The Internal Revenue Service conducted a "collection due process" hearing for Denny and Judy Patridge as a preface to collecting unpaid assessments for income-tax deficiencies and related penalties. Following the hearing the IRS Office of Appeals authorized the collection to proceed, and the Patridges sought judicial review in the district court. The district court dismissed their petition for lack of subject-matter jurisdiction, reasoning that the Tax Court alone had jurisdiction because the dispute involved income taxes. We affirm.

In January 2000 the IRS sent the Patridges notices of deficiency advising them that they or a trust that they administered owed additional income tax and

related penalties for income that was earned by the Patridges in 1996 and 1997 from their insurance business but paid to the trust. The notices of deficiency stated that the Patridges had until May 11, 2000, to challenge the determinations in the Tax Court, but no challenge was made, and in August 2000 the IRS assessed the additional tax and penalties against the Patridges personally in the amounts of $130,736 for 1996 and $88,675 for 1997. Several notices of assessments and demands for payment were sent, but the Patridges refused to pay, and in November 2000 the IRS sent the Patridges a "notice of intent to levy," and further informed them of their right to petition the IRS Office of Appeals for a "collection due process" (CDP) hearing, which they timely did.

Several CDP hearings were scheduled for the Patridges but postponed pending a criminal investigation of Mr. Patridge. In June 2005 a jury found Mr. Patridge guilty of tax evasion, money laundering, and wire fraud. And on September 25, 2006 he was sentenced to a term of 60 months' imprisonment.

A CDP hearing was conducted before a settlement officer on August 17, 2005. At the hearing the Patridges contested their underlying liability asserting that the IRS employed an illegal "whipsaw" tactic by assessing the same tax liability against them personally and against their trust. The settlement officer explained to the Patridges that he could not address this argument because, as set forth in 26 U.S.C. § 6330(c)(2)(B), the existence or amount of the underlying liability can be contested at a CDP hearing only if the taxpayer did not receive a "notice of deficiency" or did not otherwise have the opportunity to dispute his liability. The settlement officer found that neither exception applied to the Patridges. The Patridges then asserted several procedural defects in the handling of their case, but the settlement officer concluded that no such errors had occurred. Afterward the Office of Appeals issued a notice of determination authorizing the collection action to proceed and instructing the Patridges to seek review in the Tax Court if they were not satisfied.

The Patridges refused to comply with the law and instead went to district court. The district court concluded that, because the case involved federal income taxes, the Tax Court had exclusive jurisdiction over the Patridges' claims. The court dismissed the case for lack of subject-matter jurisdiction. The Patridges re-filed their petition in the Tax Court and eventually lost on summary judgment, *see* T.C. No. 1551-06L (Aug 28, 2006), and they also appealed the dismissal of the petition they had filed in district court.

The CDP procedures require the IRS to give advance written notice before levying on a taxpayer's property. *See* 26 U.S.C. § 6330(a). The taxpayer may then request a hearing before the IRS Office of Appeals. *See id.* § 6330(b). After the hearing, the Office of Appeals must issue a notice of determination that responds to the issues raised by a taxpayer during the hearing. *See* 26 C.F.R. § 301.6330, Q/A-

E8.  The notice of determination is subject to judicial review; that review was presumptively in the Tax Court at the time of the events in this case, though a taxpayer could seek review in the district court in limited circumstances.  *See* 26 U.S.C. § 6330(d)(1)(B) (2000).

Thus, the regulations and the courts (including this court) have uniformly interpreted § 6330(d) as vesting exclusive jurisdiction with the Tax Court if the Tax Court would have had jurisdiction to determine a deficiency involving the type of tax liability at issue in the collection proceedings.  *See* 26 C.F.R. § 301.6330-1(f)(2) Q & A F3; *Voelker v. Nolen*, 365 F.3d 580, 581 (7th Cir. 2004) (per curiam); *Downing v. C.I.R.*, 18 T.C. 22, 26-27 (2002).  It is axiomatic that the Tax Court has jurisdiction to review federal income tax deficiencies, 26 U.S.C. §§ 6211, 6212; *Moore v. C.I.R.*, 114 T.C. 171, 175 (2000), and "accordingly, a [petition for review] involving income taxes . . . must be filed in the Tax Court and the district court lacks jurisdiction."  *Voelker*, 365 F.3d at 581.

The Patridges raise no legitimate argument to the contrary.  It appears that the Patridges are under the misapprehension that *Voelker* is distinguishable from their case because the IRS had told Voelker that he could contest his underlying liability in the Tax Court but told the Patridges that they are procedurally barred from doing the same.  But the fact that a taxpayer is procedurally barred from seeking a direct liability reassessment does not affect jurisdiction to review his CDP hearing.  *See Downing,* 118 T.C. at 27 (explaining that even though the Tax Court was barred from reviewing income tax assessment due to lack of deficiency, it still had jurisdiction under § 6330(d) to review issues raised at CDP hearing concerning those income taxes).

The Patridges also argue that, even if § 6330(d)(1) allocates jurisdiction based on the type of tax at issue, jurisdiction over their petition still vested in the district court because their assessment included penalties and interest but they are in error.  Not only does the Tax Court have jurisdiction to determine income tax deficiencies, it also has jurisdiction "to determine whether any amount, or any addition to the tax should be assessed, if claim therefor is asserted by the Secretary at or before the hearing or rehearing."  *Downing,* 118 T.C. at 27 (citing 26 U.S.C. § 6214(a)).  Thus, the Tax Court has concluded that it will "generally have jurisdiction over additions to tax for failure to pay those taxes for the purposes of § 6330(d)(1)(B)."  *Id.*  The Patridges were assessed penalties that clearly constitute an "addition to tax for failure to pay," which the Commissioner assessed "before" any Tax Court hearing.  *See* 26 U.S.C. § 6214(a).  As a result, the Tax Court has jurisdiction under § 6214(a) to review the penalty, and thus also has jurisdiction under § 6330(d)(1)(B) to review the Patridges' petition.  The law is clear that the district court is without jurisdiction.

The Patridges next argue that jurisdiction is proper in the district court because they seek to raise procedural arguments not related to their underlying income tax liabilities. The Patridges contend that they never received an assessment or demand for payment, and that they were denied an impartial officer at their CDP hearing. These procedural issues, they assert, belong in district court. But in *Voelker* we flatly rejected the same argument, concluding that a case involving income taxes—even where procedural defects are alleged—must be brought in the Tax Court. *See Voelker,* 365 F.3d at 581. In fact, there is nothing unique about the Patridges' petition in this regard; CDP hearings amount in essence to procedural safeguards, and the typical petition for review brought in the Tax Court properly raises procedural defects with the notification and collection processes. *See, e.g., Reynolds v. C.I.R.,* T.C. Memo 2006-192, at *4 (taxpayer alleged he did not receive a notice and demand for payment); *Moore v. C.I.R.,* T.C. Memo 2006-171, at *5 (taxpayer alleged he was denied an impartial hearing officer).

Lastly, the Patridges contend that the district court has jurisdiction because "illegal whipsaw taxes" are not authorized by the Internal Revenue Code, and thus they are not income taxes within the Tax Court's jurisdiction. We find this argument without merit. On review we have found that the IRS used no whipsaw like tactics. And regardless, the Patridges' characterization of the assessments against them as "whipsaws" goes to whether the Patridges are the proper party to hold liable for the taxes, not to the type of tax at issue. *See Centel Communications Co. v. C.I.R.,* 920 F.2d 1335, 1339 (7th Cir. 1990) (explaining that "whipsaw" is an "accepted practice" in which the Commissioner "proposes his best arguments against each taxpayer in an effort to collect additional taxes from one").

The judgment is AFFIRMED.